MISSISSIPPI BENEVOLENT MUT. AID ASSN *v.* BANKS.

[73 South. 283, Division B.]

INSURANCE. *Mutual benefit insurance. Reformation of policy to conform to application. Right of beneficiary.*

Where a member of a mutual benefit association made out and forwarded an application for life insurance which without his fault was lost and never received by the officers of the Supreme Lodge, and another application was executed and forwarded for him, which recited that it was only an application for a policy, which if granted, would become effective in thirty days after issuance; and a policy was duly issued and delivered which provided that if the member's certificate had not been in force thirty days,

no benefit would be allowed in case of illness or death; and the member died less than thirty days from the date of issuance of the policy, in such case his widow, the beneficiary, could not have reformation of the policy so as to change its date to conform to the first application and thus render the benefit association liable.

APPEAL from the chancery court of Holmes county. HON. JAMES F. McCOOL, Chancellor.

Bill by Julia Banks against the Mississippi Benevolent Mutual Aid Association. From a decree for complaint, defendant appeals.

Appellant is a benevolent order or association domiciled at Hattiesburg, Miss., and writes fraternal insurance for its members. Appellee is the wife of one Stephen Banks, who joined the subordinate lodge of appellant association at Durant, Miss. Stephen Banks was initiated some time in April, 1910, and on or about April 20, 1910, made written application for a policy of insurance on his life, designating appellee as the beneficiary. For some reason this application was not received by the officers of the Supreme Lodge at Hattiesburg; and Banks, having failed to receive his policy promptly, made complaint to the officers of the local lodge, and thereafter, on May 31, 1910, another application was executed and forwarded for and on behalf of Stephen Banks. In pursuance of this application a policy in the sum of two hundred and fifty dollars was issued June 3, 1910, and duly delivered. Stephen Banks died June 23, 1910, less than thirty days from the date of the policy. The policy, otherwise termed a certificate, contains, among other things, the following clause:

"Provided again, that if said member's certificate has not been in force a full term and period of thirty (30) days, no benefits will be allowed thereon in event of illness or death."

And another provision as follows:

"Provided again, that no liability of said association shall ever extend to or cover any disability or death occurring under this certificate during the first thirty days following the date of its issue, or during the first thirty days following any renewal hereof."

The written application in question contains the following:

"I understand that this is nothing more than an application for a policy, the cost of which is three dollars and fifty cents, and if granted it will become effective in thirty days after the issuance of same as recorded on the books in the S. & D. of G. M. B. M. A. Association of Hattisburg, Mississippi. If not granted the said sum will be returned to the applicant."

After the death of Stephen Banks, appellee exhibited her bill in equity, asking for a reformation of the policy so as to change the date thereof to conform to the first application, and also to change the amount of the policy from two hundred and fifty dollars to three hundred and fifty dollars as originally applied for, and further praying for a personal decree for one third the face of the policy in accordance with the terms of the contract. The chancellor granted the relief prayed for, except as to the amount of the policy, and from this decree appellant appeals. There is no evidence that more than one policy was ever issued, or that the officers of the Supreme Lodge ever in fact received the first application.

*T. C. Hannah* and *J. D. Guyton,* for appellant.

When was the contract of insurance made and completed? A correct answer to this question is absolutely fatal to complaint's cause. Ordinarily when a person makes an application for insurance, and this is accepted according to its terms by the company, a contract of insurance is effected. But there must be a meeting of the minds of both parties before the contract is completed; and if, after consideration by the company,

a policy, different from the one applied for, is issued, the contract is not completed until the applicant accepts the policy tendered. Propositions and counterpropositions do not make a contract; before either party is bound, the proposition of one must be accepted by the other exactly as proposed; there must be a meeting of the minds on the same thing. *N. Y. Life Ins. Co.* v. *McIntosh,* 38 So. 775; *Jacobs* v. *Ins. Co.,* 15 So. 639, 71 Miss. 659. In the McIntosh case, application was made for a policy and the company issued a different policy. On delivery this policy was refused. On further consideration and evidence of insurability the company issued another policy to the applicant, more favorable than the first tendered him, but yet not the one applied for, and forwarded this to its agent for tender and delivery. The court held there was no contract effected. Later, the bill to enforce payment of this policy was amended so as to show that the company's agent had written the applicant that his application had been accepted and the company would issue a policy from the start on the plan applied for. The court held this good on the theory of estoppel. 41 So. 381.

In the Jacobs Case, the applicant died while the company was considering his application which was not approved. The court held there was no liability, notwithstanding there was an allegation that the application was refused arbitrarily and without cause.

"Mere delay in accepting an application for insurance which "is subjected to the approval of the company, although such" delay may be unnecessary, does not give rise to a contract "of insurance." 25 Cyc. 714.

"As a rule, until there has been a proposition for insurance" by the applicant and acceptance thereof by the company, "there is no contract," and the acceptance must be signified, "by some act on the part of the company." 25 Cyc. 713.

There is no difference between the formation of a contract of mutual benefit insurance and a contract of ordinary insurance. They are both governed by the terms of the application. I again call the court's attention to the terms of the application in the case at bar, heretofore quoted in this brief, to the effect that it is nothing more than an application and is not to be in effect until thirty days after a policy · is issued and recorded on the books of the Association at Hattiesburg. The facts show that an application was made and forwarded to the office in Hattiesburg, which application was lost in some way, and never received at the home office. Another application was made on May 31st. After this was considered at the home office, a policy for two hundred and fifty dollars in consideration of the payment of monthly assessments of seventy-five percent was issued, and forwarded to the local lodge at Durant for tender and delivery. It was delivered and accepted. Julia Banks, the beneficiary, says her husband expressed himself at the time of delivery as being satisfied with the policy. Now the policy applied for was for three hundred and fifty dollars in consideration of the payment of monthly assessments of one dollar each. So we see that the Association never did issue the policy applied for, but a very different policy. This certainly constituted a counter-proposition on the part of the Association to the applicant, and no contract was effected between them until the applicant accepted this policy. The applicant did accept this policy at the time it was delivered him in June and expressed himself as being satisfied. At this time, and never before, was the contract in this case completed. This point is fundamental and all pervading.

*W. J. Latham,* for appellee.

There is very little in the opinion of the counsel for the appellee to be said in answer to the argument by counsel for the appellant. When the court will con-

sider the facts in this case; that they are all colored people and not versed in the strict rules of business; all being guilty alike of gross carelessness in the management of affairs of this character.

That the appellant in this case was a fraternal benevolent association operating on the lodge system, having a local lodge at Durant, to which Banks became a member; and that Banks had relied upon the representation or fact, that the local lodge was the agent of the supreme lodge, and that its acts as such agent, were binding upon the Supreme Lodge; and that when the local lodge at Durant accepted Banks as a member and accepted his money, paid by him as premiums on his policy, that these acts were binding upon the Supreme Lodge; and that by the Subordinate Lodge accepting his money, bound appellant to carry out the agreement made to Banks by the Subordinate Lodge.

It is clear in the record, that Banks paid the proper amount for a three hundred and fifty dollar policy; that he paid the premiums required to carry a three hundred and fifty dollar policy; and the fact that a two hundred and fifty dollar policy was issued without the explanation to Banks and without refunding the difference between a three hundred and fifty dollar policy and the two hundred and fifty dollar policy is not sufficient of itself to sustain a decree of the court that Banks is bound by the terms of the policy actually delivered to him.

It is clear from circumstances, without explanation, that it was a mutual mistake on the part of both concerned; that the policy was issued for two hundred fifty dollars instead of three hundred fifty dollars, or a fraud on the part of the Supreme Lodge, which was never observed, and which the insurance company could not afterwards take advantage of.

In other words, from the aplication originally made by Banks, and the money paid in the order by him, he was clearly entitled to a three hundred fifty policy,

if any at all, and the insurance company would not be permitted to collect the price of the three hundred fifty policy and the premiums for the same, then hold the insured up to a policy of less value. As the by-laws do not provide for different classes of persons, the association should be compelled to issue to all policy-holders the same character of policy for the same money. It evidently must have been the intention of the insurance company to do that very thing in this case or else to commit a gross fraud on the insured Banks.

STEVENS, J., delivered the opinion of the court.

Conceding that Stephen Banks was duly initiated and conformed to all the requirements in making out and forwarding his application, and that, without negligence on his part, the original application was lost or misplaced, it still appears beyond dispute that only one certificate of insurance was issued, and that the applicant died in less than thirty days from the date of the issuance of this certificate. By the express terms of the policy there can be no recovery. There is only one contract, and this contract was accepted by Stephen Banks in his lifetime. The written application itself indicates that the policy is effective, not from the date of the application, but from the date of the policy. It appears to be conceded by both parties that Stephen Banks would not be insured from the date of his initiation, or from the date of the written application, if no policy at all is issued. The policy or certificate is essential to the right of recovery. There was nothing about the written certificate or policy to be reformed. The officers of the Supreme Lodge by the undisputed proof never received the first application, and acted only upon the second application, whether it be termed a second or a duplicate. It would perhaps be gratifying to everybody to see the wife recover in this case, but under the law and facts she had no case.

Reversed and decree here for appellant.

*Reversed.*